DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Renee Guthrie ("Grandmother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that removed her grandson, E.M., from her legal custody and placed the child in the legal custody of Richard Guthrie ("Grandfather"), who is the child's maternal grandfather and Grandmother's ex-husband. We affirm.
 I. {¶ 2} On April 2, 2001, Lorain County Children Services filed a complaint alleging that E.M., born March 14, 2000, was a neglected and dependent child. According to the allegations in the complaint, E.M.'s mother ("Mother") had drug problems and was not properly caring for him. E.M. was placed with Grandmother and Grandfather, his maternal Grandparents. On May 15, 2001, E.M. was adjudicated a neglected and dependent child and his placement continued with his maternal grandparents.
 {¶ 3} On July 27, 2001, the trial court placed E.M. in the legal custody of Grandmother.[1] At that time, Grandmother and Grandfather were living in the same home and E.M. resided with both of them. During April or May of 2003, Grandmother moved out of the home. Although Grandmother initially left E.M. with Grandfather, she returned several weeks later and took the child with her. She did not allow Grandfather to visit E.M. or speak to him on the telephone and she told Grandfather that she and E.M. were going to move to another state.
 {¶ 4} On August 6, 2003, Grandfather filed a motion to intervene and a motion for a change of custody of E.M. While the motion was pending, Grandfather was granted visitation time with E.M. Following a hearing on the motion to change custody, the trial court found that there had been a change of circumstances and that placing E.M. in the legal custody of Grandfather would be in the child's best interest. Consequently, the trial court placed E.M. in the legal custody of Grandfather.
 {¶ 5} Grandmother appeals and raises two assignments of error, which will be consolidated because Grandmother argued them jointly.
 II. First Assignment of Error "THE TRIAL COURT ERRED IN FAILING TO GRANT THE MOTION TO DISMISS MADE BY ATTORNEY BLAKE ON BEHALF OF RENEE GUTHRIE AT THE CLOSE OF THE MOVANT'S CASE."
 Second Assignment of Error
 "THE TRIAL COURT ERRED IN ITS DECISION TO MODIFY THE CUSTODY FROM MATERNAL GRANDMOTHER, RENEE GUTHRIE"
 {¶ 6} Grandmother contends that the trial court erred in changing the legal custodian of her grandchild, E.M. Pursuant to R.C. 2151.42(B), the trial court was authorized to modify its 2001 order granting legal custody of E.M. to Grandmother only if it found "that a change [had] occurred in the circumstances of the child or the person who was granted legal custody, and that modification * * * of the order [was] necessary to serve the best interest of the child." Grandmother does not challenge the trial court's finding that a change in circumstances had occurred. Instead, she disputes only the trial court's finding that placing E.M. with Grandfather was necessary to serve E.M.'s best interest.
 {¶ 7} This Court reviews a trial court's best interest finding to determine whether it was against the manifest weight of the evidence. See In re A.B., 9th Dist. No. 22438, 2005-Ohio-1273, at ¶ 5. When evaluating whether a judgment is against the manifest weight of the evidence in a juvenile court, the standard of review is the same as that in the criminal context. Id. at ¶ 6. In determining whether a criminal conviction is against the manifest weight of the evidence:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988),38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment." Id.
 {¶ 8} The trial court heard the following undisputed evidence. Grandmother was granted legal custody of E.M. on July 27, 2001. At that time, Grandfather and Grandmother were living together and both grandparents cared for the child. In fact, because Grandfather was at home during the day, he was E.M.'s primary caretaker. Grandfather played with the child and prepared his meals and they had a "very normal, happy daily routine." Grandfather cared for E.M. on a daily basis for nearly two years.
 {¶ 9} During April or May of 2003, Grandmother moved out of the home and left E.M. with Grandfather there. For the next three weeks, E.M. lived with Grandfather alone until Grandmother returned and took the child. She told Grandfather that he could not call or visit the child and she threatened to move out of state. Grandfather missed E.M. and begged to see him, but Grandmother only occasionally allowed Grandfather or E.M's mother to visit with the child until the court finally ordered weekly visitation. After visitation was ordered by the court, Grandmother did not allow Grandfather or Mother to see E.M. other than on scheduled visitation days. Consequently, as Mother noted at the hearing, she and Grandfather were not able to see E.M. on his birthday or most holidays because those were not scheduled visitation days.
 {¶ 10} After Grandmother removed E.M. from Grandfather's care, Grandfather grew increasingly concerned about the care E.M. was receiving from Grandmother. When Grandfather saw E.M. at the scheduled visits, he observed that the child was often dirty and had numerous cuts and bruises. Although cuts and bruises may have be normal for a young boy, Grandfather described for the court incidents that he had observed during which Grandmother had failed to adequately supervise E.M. while he played at the park.
 {¶ 11} Grandfather and Mother testified that Grandmother would often yell at E.M. They further explained that Grandmother, who is Caucasian, frequently used racially-derogatory terms in the presence of E.M., who is a biracial child.
 {¶ 12} At the time of the hearing, E.M. was five and one-half years old and was not toilet trained, he could not dress himself or tie his shoes, he could not write or spell his name, and he was not enrolled in school. Grandfather expressed serious concerns about the child not being developmentally on target for his age and the fact that Grandmother had done nothing to address the problem. Grandmother had not spoken to a pediatrician, therapist, or any other person or agency about E.M.'s delays. It was unclear whether she even took the child for regular medical check-ups and she had never taken the child to a dentist.
 {¶ 13} The evidence demonstrated that Mother was employed full-time, was pulling her life back together and hoped someday to be reunited with E.M. There was also evidence that Grandfather had a better relationship with Mother and was more likely to facilitate visits between E.M. and Mother.
 {¶ 14} Given the evidence before the trial court, we cannot say that it lost its way in concluding that legal custody to Grandfather was necessary to serve the best interest of E.M. The assignments of error are overruled.
 III. {¶ 15} Grandmother's assignments of error are overruled and the judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
WHITMORE, P. J., MOORE, J. Concur.
[1] For reasons that are not explained in the record, the journal entry appears to have also included Grandfather's name, but his name was removed from the order with white correction fluid.